UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALEJANDRO TAVAREZ,

      *Plaintiff*,

vs.

WILLIAMSBURG 359 LLC, and RUDE
MOUTH BK LLC,

      *Defendants*.

## **COMPLAINT**

Plaintiff, ALEJANDRO TAVAREZ (hereinafter, "Plaintiff"), by and through undersigned

counsel, hereby files this Complaint and sues Defendants, WILLIAMSBURG 359 LLC, and

RUDE MOUTH BK LLC (hereinafter, "Defendants"), for injunctive relief pursuant to the

Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., (hereinafter, the "ADA") and the

ADA's Accessibility Guidelines, 28 C.F.R. Part 36 (hereinafter, the "ADAAG").

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C., §§1331

and 1343 for Plaintiff's claims arising under 42 U.S.C. § 12181, *et seq*., based upon Defendants'

violations of Title III of the ADA (see also, 28 U.S.C. §§ 2201 and 2202).

2.      The subject property is a wine bar located on or about 359 Metropolitan Ave,

Brooklyn, NY 11211, doing business as Rude Mouth (hereinafter, the "Subject Premises").

3.      All events giving rise to this lawsuit occurred in the State of New York. Venue is

proper in this Court as the Subject Premises are located in the Eastern District.

**PARTIES**

**4.** Plaintiff, ALEJANDRO TAVAREZ, is over the age of 18, *sui juris*, and a resident of Brooklyn, New York. Plaintiff has been a paraplegic for the past 25 years, is bound to ambulate in a wheelchair, and is a qualified individual under the ADA.

**5.** Defendant, WILLIAMSBURG 359 LLC, is a domestic limited liability company which is authorized to and does transact business in the State of New York and within this judicial district. Defendant, WILLIAMSBURG 359 LLC, is the owner of the Subject Premises.

**6.** Defendant, RUDE MOUTH BK LLC, is a domestic limited liability company which is authorized to and does transact business in the State of New York and within this judicial district and is the owner/operator of the bar known as "RUDE MOUTH" located at the Subject Premises.

**7.** The Plaintiff enjoys visiting RUDE MOUTH for its cool yet cozy ambience, excellent wine list, and small bites. It is a perfect place to socialize with local patrons, friends, and family. However, despite Plaintiff's appreciation of the bar, significant accessibility barriers and ADA violations limit his ability to fully enjoy the experience.

**FACTUAL ALLEGATIONS AND CLAIM**

**8.** Most recently on July 25, 2026, Plaintiff, in his individual capacity, visited the Subject Premises and personally encountered physical barriers to access, including a step at the entrance with no ramp, resulting in legal harm and injury. Plaintiff continues to suffer harm due to the existence of these barriers and the Defendants' failure to comply with ADA regulations.

**9.** Plaintiff has visited the Subject Premises and intends to return to utilize the goods, services, and accommodations offered to the public. However, he is deterred from returning while the discriminatory barriers and non-compliant policies described herein persist.

**10.** Plaintiff has been denied full and equal access to the Subject Premises, preventing him from enjoying the goods and services offered therein. These denials are caused by the physical barriers, including those outlined in this Complaint, and will continue until the barriers are removed.

**11.** Pursuant to 42 U.S.C. § 12134(a), the Department of Justice, through the Office of the Attorney General, published revised regulations for Title III of the Americans with Disabilities Act of 1990 in the Federal Register on September 15, 2010. These regulations required public accommodations to comply with the updated standards by March 15, 2012.

**12.** Under the "Safe Harbor" provision outlined in 28 CFR § 36.304(d)(2)(i), elements in existing facilities that have not been altered on or after March 15, 2012, and that comply with the technical and scoping specifications of the 1991 Standards are not required to be modified to meet the 2010 Standards. However, the violations described in this Complaint fail to comply with both the 1991 Standards and the 2010 Standards.

**13.** The Subject Premises, as a public accommodation and service establishment, is required by law to comply with the ADA and ADAAG. However, it remains non-compliant with these standards.

**14.** Plaintiff has suffered harm and injury as he personally encountered barriers to access at the Subject Premises, and she will continue to suffer harm due to the Defendants' failure to address the ADA violations described herein.

**15.** Plaintiff has experienced direct and indirect injury caused by the physical barriers and ADA violations at the Subject Premises and the Defendants' actions or inactions in remedying these violations.

16.     Most recently on July 25, 2026, and throughout this year, Plaintiff attempted to visit and enjoy the Subject Premises but was unable to do so fully due to his disability and the existence of physical barriers, including a step at the entrance with no ramp, and other dangerous conditions, and ADA violations that restricted his access to the property and its accommodations.

17.     Plaintiff intends to return to the Subject Premises as soon as it is made accessible, including this fall and winter, to enjoy the wine and snacks in a cozy space with friends and family in a neighborhood he frequents often. However, his ability to do so is restricted by the ongoing physical barriers and ADA violations that limit access for individuals with disabilities.

18.     Plaintiff regularly visits the Williamsburg neighborhood to meet friends, and partake of the trendy cafes, buzzy restaurants, wine bars, street art and stunning waterfront views that make up this destination location.   The neighborhood is easily accessible by public transportation and is very pedestrian-friendly.

19.     Plaintiff intends to return regularly, specifically this fall and going forward, as soon as the premises is made accessible.

**COUNT I**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**
**(Against All Defendants)**

20.     Plaintiff restates Paragraphs 1-19 as though fully set forth herein.

21.     Defendants, WILLIAMSBURG 359 LLC, and RUDE MOUTH BK LLC, have discriminated against the Plaintiff and others with disabilities by failing to provide full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Subject Premises, as required by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36.

**22.** Defendant, WILLIAMSBURG 359 LLC, as the owner of the Subject Premises, is responsible for ensuring that the property complies with the ADA, including removing architectural barriers where readily achievable as required by 42 U.S.C., § 12182(b)(2)(A)(iv).

**23.** Defendant, RUDE MOUTH BK LLC, as the operator of the business located at the Subject Premises, is responsible for ensuring that its policies, practices, and any barriers within its leased space comply with the ADA.

**24.** The Plaintiff's ability to access the Subject Premises and fully benefit from its goods, services, facilities, privileges, advantages, and accommodations is hindered by various physical barriers, unsafe conditions, and ADA violations, including but not limited to the following:

1) INACCESSIBLE ENTRANCE.

   RAISED CURB AT TRAVEL PATH TO ENTRANCE ACTS AS A BARRIER TO ACCESSIBILITY.

   REQUIRED RAMP NOT PROVIDED FOR RAISED CURB AT TRAVEL PATH TO ENTRANCE.
   a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.
   b. Accessible routes shall be provided where required by 206.2.
   c. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.
   d. Entrances shall be provided in accordance with 206.4. Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.
   e. Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1).
   f. Accessible routes shall comply with 402.
   g. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

    h. Changes in level shall comply with 303.

    i. Changes in level greater than ½ inch high shall be ramped, and shall comply with 405 or 406

2) EXISTING STEP AT ENTRANCE DOOR ACTS AS A BARRIER TO ACCESSIBILITY.

REQUIRED RAMP NOT PROVIDED FOR STEP AT ENTRANCE DOOR.

    a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    b. Accessible routes shall be provided where required by 206.2.

    c. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

    d. Entrances shall be provided in accordance with 206.4. Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.

    e. Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1).

    f. Accessible routes shall comply with 402.

    g. Accessible routes shall consist of one or more of the following components: walking surfaces with a running slope not steeper than 1:20, doorways, ramps, curb ramps excluding the flared sides, elevators, and platform lifts. All components of an accessible route shall comply with the applicable requirements of Chapter 4.

    h. Changes in level shall comply with 303.

    i. Changes in level greater than ½ inch high shall be ramped, and shall comply with 405 or 406.

3) REQUIRED MINIMUM MANEUVERING CLEARANCE NOT PROVIDED AT ENTRANCE DOOR.

4) NON-COMPLIANT CHANGE IN FLOOR LEVEL WITHIN REQUIRED MANEUVERING CLEARANCE AT ENTRANCE DOOR.

    a. Accessible routes shall be provided in accordance with 206 and shall comply with Chapter 4.

    b. Accessible routes shall be provided where required by 206.2.

    c. At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.

    d. Entrances shall be provided in accordance with 206.4. Entrance doors, doorways, and gates shall comply with 404 and shall be on an accessible route complying with 402.

    e. In addition to entrances required by 206.4.2 through 206.4.9, at least 60 percent of all public entrances shall comply with 404.

    f. Means of egress shall comply with section 1003.2.13 of the International Building Code (2000 edition and 2001 Supplement) or section 1007 of the International Building Code (2003 edition) (incorporated by reference, "Referenced Standards" in Chapter 1)

    g. Minimum maneuvering clearances at doors and gates shall comply with 404.2.4. Maneuvering clearances shall extend the full width of the doorway and the required latch side or hinge side clearance.

    h. Floor or ground surface within required maneuvering clearances shall comply with 302. Changes in level are not permitted.

5) INACCESSIBLE BAR.

6) NON-COMPLIANT HEIGHT OF BAR EXCEEDS MAXIMUM HEIGHT ALLOWANCE. PORTION OF BAR REQUIRED TO BE ACCESSIBLE NOT PROVIDED.

    a. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

    b. Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

    c. Dining surfaces include, but are not limited to, bars, tables, lunch counters, and booths.

    d. The tops of dining surfaces and work surfaces shall be 28 inches (710 mm) minimum and 34 inches (865 mm) maximum above the finished floor or ground.

7) INACCESSIBLE DINING TABLES.

8) REQUIRED MINIMUM KNEE AND TOE CLEARANCE NOT PROVIDED AT DINING TABLES.

9) A MINIMUM PERCENTAGE OF EXISTING DINING TABLES REQUIRED TO BE ACCESSIBLE NOT PROVIDED.

    a. Where dining surfaces are provided for the consumption of food or drink, at least 5 percent of the seating spaces and standing spaces at the dining surfaces shall comply with 902.

    b. Dining surfaces and work surfaces shall comply with 902.2 and 902.3.

    c. A clear floor space complying with 305 positioned for a forward approach shall be provided. Knee and toe clearance complying with 306 shall be provided.

    d. Where toe clearance is required at an element as part of a clear floor space, the toe clearance shall extend 17 inches (430 mm) minimum under the element.

    e. Toe clearance shall be 30 inches (760 mm) wide minimum.

    f. Where knee clearance is required under an element as part of a clear floor space, the knee clearance shall be 11 inches deep minimum at 9 inches above the ground, and 8 inches deep minimum at 27 inches (685 mm) above the finish floor or ground.

    g. Knee clearance shall be 30 inches (760 mm) wide minimum.

10) COMPLIANT SIGNAGE IDENTIFYING THE RESTROOM NOT PROVIDED

AS REQUIRED.

a. Signs shall be provided in accordance with 216 and shall comply with 703.

b. Interior and exterior signs identifying permanent rooms and spaces shall comply with 703.1, 703.2, and 703.5. Where pictograms are provided as designations of permanent interior rooms and spaces, the pictograms shall comply with 703.6 and shall have text descriptors complying with 703.2 and 703.5.

c. Section 216.2 applies to signs that provide designations, labels, or names for interior rooms or spaces where the sign is not likely to change over time. Examples include interior signs labeling restrooms, room and floor numbers or letters, and room names. Tactile text descriptors are required for pictograms that are provided to label or identify a permanent room or space. Pictograms that provide information about a room or space, such as "no smoking," occupant logos, and the International Symbol of Accessibility, are not required to have text descriptors.

d. Signs shall comply with 703. Where both visual and tactile characters are required, either one sign with both visual and tactile characters, or two separate signs, one with visual, and one with tactile characters, shall be provided.

e. Tactile characters on signs shall be located 48 inches (1220 mm) minimum above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60 inches (1525 mm) maximum above the finish floor or ground surface, measured from the baseline of the highest tactile character.

f. Where a tactile sign is provided at a door, the sign shall be located alongside the door at the latch side. Where a tactile sign is provided at double doors with one active leaf, the sign shall be located on the inactive leaf. Where a tactile sign is provided at double doors with two active leafs, the sign shall be located to the right of the right hand door. Where there is no wall space at the latch side of a single door or at the right side of double doors, signs shall be located on the nearest adjacent wall. Signs containing tactile characters shall be located so that a clear floor space of 18 inches (455 mm) minimum by 18 inches (455 mm) minimum, centered on the tactile characters, is provided beyond the arc of any door swing between the closed position and 45 degree open position.

11) THE FIRST OF TWO DOOR LOCKS AT RESTROOM DOOR IS INACCESSIBLE.

12) NON-COMPLIANT HEIGHT OF THE FIRST OF TWO DOOR LOCKS AT RESTROOM DOOR EXCEEDS MAXIMUM HEIGHT ALLOWANCE.

a. Doors, doorways, and gates that are part of an accessible route shall comply with 404.

b. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4. Operable parts of such hardware shall be 34 inches (865 mm) minimum and 48 inches (1220 mm) maximum above the finish floor or ground.

13) THE FIRST OF TWO NON-COMPLIANT DOOR LOCKS AT RESTROOM DOOR REQUIRES PINCHING OF FINGERS.

a. Doors, doorways, and gates that are part of an accessible route shall comply

with 404.

b. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4

c. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum.

14) THE SECOND OF TWO NON-COMPLIANT DOOR LOCKS AT RESTROOM DOOR REQUIRES PINCHING OF FINGERS.

a. Doors, doorways, and gates that are part of an accessible route shall comply with 404.

b. Handles, pulls, latches, locks, and other operable parts on doors and gates shall comply with 309.4

c. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds maximum.

15) REQUIRED GRAB BARS NOT PROVIDED ON REAR AND SIDE WALLS OF WATER CLOSET IN RESTROOM.

a. Grab bars for water closets shall comply with 609. Grab bars shall be provided on the side wall closest to the water closet and on the rear wall.

16) NON-COMPLIANT FAUCET KNOBS AT LAVATORY IN RESTROOM REQUIRE TWISTING OF THE WRIST.

a. Controls for faucets shall comply with 309. Hand-operated metering faucets shall remain open for 10 seconds minimum.

b. Operable parts shall be operable with one hand and shall not require tight grasping, pinching, or twisting of the wrist. The force required to activate operable parts shall be 5 pounds (22.2 N) maximum.

17) INSULATION OF PIPES AND WATER LINES UNDER THE LAVATORY IN RESTROOM NOT PROVIDED AS REQUIRED.

a. Water supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact. There shall be no sharp or abrasive surfaces under lavatories and sinks.

18) INACCESSIBLE COAT HOOK IN RESTROOM.

19) NON-COMPLIANT HEIGHT OF COAT HOOK IN RESTROOM EXCEEDS MAXIMUM HEIGHT ALLOWANCE.

a. Coat hooks shall be located within one of the reach ranges specified in 308.

b. Where a forward reach is unobstructed, the high forward reach shall be 48 inches maximum, and the low forward reach shall be 15 inches minimum above the finish floor or ground.

c. Where a high forward reach is over an obstruction, the clear floor space shall extend beneath the element for a distance not less than the required reach depth over the obstruction. The high forward reach shall be 48 inches maximum where the reach depth is 20 inches maximum. Where the reach depth exceeds 20 inches, the high forward reach shall be 44 inches maximum, and the reach

depth shall be 25 inches maximum.

d. Where a clear floor or ground space allows a parallel approach to an element and the side reach is unobstructed, the high side reach shall be 48 inches maximum, and the low side reach shall be 15 inches minimum above the finish floor or ground.

e. Where a clear floor or ground space allows a parallel approach to an element and the high side reach is over an obstruction, the height of the obstruction shall be 34 inches maximum and the depth of the obstruction shall be 24 inches maximum. The high side reach shall be 48 inches maximum for a reach depth of 10 inches maximum. Where the reach depth exceeds 10 inches, the high side reach shall be 46 inches maximum for a reach depth of 24 inches maximum.

25. Plaintiff has attempted to access the Subject Premises but has been denied full and equal enjoyment of the goods, services, programs, and activities offered due to his disability. The physical barriers, dangerous conditions, and ADA violations described above have caused Plaintiff to suffer harm, and Plaintiff reasonably expects to face continued discrimination unless and until Defendants are compelled to remove these barriers and comply with the ADA.

26. Plaintiff lives approximately 7.2 miles from the Subject Premises and as stated in Par. 18, regularly frequents the Williamsburg neighborhood, which is easily accessible by public transportation.

27. The removal of the physical barriers, dangerous conditions, and ADA violations described herein is readily achievable and can be accomplished without significant difficulty or expense, as defined by 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); and 28 C.F.R. § 36.304.

28. Plaintiff is without an adequate remedy at law and is suffering irreparable harm. Plaintiff reasonably anticipates continued harm unless Defendants are required to remove the physical barriers, dangerous conditions, and ADA violations at the Subject Premises.

**RELIEF SOUGHT**

10

**29.** Plaintiff seeks an injunction requiring Defendants to bring the Subject Premises into full compliance with the ADA and ADAAG by remediating all violations.

**30.** Pursuant to 42 U.S.C. §12188(a), this Court is provided with authority to grant injunctive relief to Plaintiff, including an order to alter the Subject Premises to make it readily accessible to and usable by individuals with disabilities to the extent required by the ADA, and closing the Subject Premises until the requisite modifications are completed.

**31.** Plaintiff has been obligated to retain undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, costs, and expenses paid by the Defendants, pursuant to 42 U.S.C., §§ 12205 and 12217.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue a permanent injunction enjoining Defendants from continuing their discriminatory practices, ordering Defendants to remove the physical barriers to access and alter the Subject Premises to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA, closing the Subject Premises until the barriers are removed and requisite alterations are completed, and awarding Plaintiff his reasonable attorney's fees, expert fees, costs, and litigation expenses incurred in this action.

August 12, 2026                                        Respectfully submitted,

                                        _/s/ Jennifer E. Tucek, Esq._
                                        Law Office of Jennifer Tucek, PC
                                        Bar No. JT2817
                                        641Lexington Avenue, 15th Floor
                                        New York, New York 10017
                                        (917) 669-6991
                                        TucekLaw@Gmail.com
                                        *Attorney for Plaintiff*

11

12